Good morning, Your Honors. Ramsey Abadou from the law firm of Kahn, Swick & Fody here in San Francisco on behalf of the petitioner, Bridgestone Investment Corporation, Ltd. We're obviously here, Your Honors, on a petition for writ of mandamus of a lead plaintiff decision entered by the Northern District of California that denied my client's presumptive right to be appointed lead plaintiff in that case involving Tesla. This petition presents the question whether a district court has the authority, in contravention of the PSLRA and the decisions, the mandamus decisions by this court in 2002, 2007, and 2009, to select a lead plaintiff based on the narratives he or she could tell, the CEO's dislikes of short sellers, and breadth of investments. And that language comes from the district court's two orders, the order appointing lead, the order denying motion for reconsideration, and the response it filed in this court. The genesis of the court's error, we believe, was its desire to select as lead plaintiff the person with the broadest financial interest. While that may be an okay sentiment, courts interpret laws and do not rewrite statutes. The PSLRA in this case says that the court shall appoint as lead plaintiff the person with the largest, not broadest, largest financial interest in the relief sought by the class that otherwise satisfies the typicality and adequacy requirements of Rule 23. We emphasize this point to the court. We repeatedly cited this court's decision in Kavanaugh to the court to no avail. Kavanaugh appears nowhere in the district court's opinions below and was cited really for the first time here in its response to this court. And we believe that was clearly erroneous. Specifically, which was clearly erroneous? Appointing a lead plaintiff that the court believed had the broadest financial interest as opposed to the largest financial interest. The PSLRA says nothing about investment diversity and broad financial interest. This Court has made crystal clear in Kavanaugh the process the court should, district court, should undertake in selecting a lead plaintiff. But the court was led astray here, and it was led astray by the ---- I can't see what. I can't tell what. Page 7 of what? I'm sorry, Your Honor. Of the order in which the court finds that Mr. Littleton is the most adequate plaintiff. Sure. Now, you can say broadest interest, most adequate. But you have to look beyond that. And most adequate is the language that comes from the statute.  And in Kavanaugh, this Court taught us that most adequate needs to be construed narrowly. That's the language of this Court in Kavanaugh. Most capable is another. I can you point me in the order where the error in the analysis. You're here on mundamus. It's a basically tough standard in terms of meeting the empowerment factors. I'm looking at page 3 of the district court's order and looking to the process that was laid out in Ray Kavanaugh. The district court, starting on page 3, said, okay, I'm going to order the plaintiffs from greatest to smallest total asserted loss. That seems to be the appropriate first step to consider. Who's got the biggest loss and then who's got the little loss. So that seems correct to me. And then the district court went through each of those groups that were to be lead plaintiff and then went on to analyze adequacy and typicality. Isn't that what we set to do in Ray Kavanaugh? In Ray Kavanaugh, it says, yes, Your Honor, you start with the largest financial interest and you work your way down. But from the outset here, and we can cite and begin with the hearing transcript, the Court showed a certain hostility to that process by saying we could start this process today alphabetically for no other reason. But it wasn't done. I'm sorry? It wasn't done. It was just thrown out. It was done. Because if you read, and this is Exhibit D at 2, 3, and also Exhibit C at 7. These are the district court's orders below. And this is on page 4 of our reply memorandum. He appoints Mr. Littleton ultimately on this basis. Mr. Littleton held interests that cover most of the person's entities likely to be in the class, long positions in common stock, long positions in options, and short positions in options, and thus can most adequately represent the class. He doesn't say, I'm appointing Mr. Littleton because he's got the largest financial interest. Indeed he doesn't. He may refer to it, Your Honor, but my client had a larger loss. And the reason he didn't appoint my client was because, and counsel says this in his papers, because my client didn't hold any short interests. He denied motions because people were either long only or short only. Your client was a long only. That is correct, Your Honor. And the reason the Court does this, and if you look at each movement that he goes through, he'll say short only, long only. What he wanted to do was appoint somebody that covered everything. That was error and clearly erroneous. The reason the Court was so dead set on appointing somebody with the broadest financial interest and denying the motions like my client, who had larger losses, was because the CEO, the defendant in this case, Mr. Musk, issued his tweet on August 7, 2018, to harm short sellers. That was his motivation, right? He didn't like short sellers. He didn't like the criticism of his company. So he issues a tweet to harm short sellers. I'm taking Tesla private at $420, funding secured. The judge, for whatever reason, conflated Mr. Musk's Sienner, which every plaintiff in every securities fraud case must plead and later prove with economic loss, when in fact they have nothing to do with each other. And if you go back and look at the hearing transcript, and it starts there, the judge is focused on investment diversity, not loss. So while he may pay lip service to loss in his order, at the end of the day, my client's motion was denied, despite the fact that he had a significantly larger loss than the proposed plaintiff that was ultimately appointed. Why? Because he wasn't short, which makes no sense. As we go to the question of typicality. It does not. Well, then spell that out for me. It doesn't, Your Honor. Every class in securities cases, every class, in 10b cases like this one, has in it individuals who are long, who are short, who may be day traders, who have different investment strategies. A rule that a court has to appoint as lead plaintiff, somebody with every investment strategy, simply makes no sense, particularly given that the court did so here because he conflated Sienner, the CEO Sienner, with largest financial interest. And that's the problem with the Court's order, and that's why we don't understand why it did what it did. If there was a nexus between the CEO Sienner and economic loss, I'd get it. But there is none. So what the Court says in its response to this Court is, well, I did that because I think that person will be able to tell a better narrative. I don't even know what that means, a better narrative. At the end of the day, my client, who was the only client to show up at the lead plaintiff hearing as a long investor, has every interest, obviously, in pleading and proving the elements of a 10b claim, which includes loss causation, materiality, falsity or omissions, and reliance, as well as Sienner.  Kennedy. What's our standard of review here? Is it abuse of discretion or something else? Srinivasan. The standard of review, Your Honor, is, I think, abuse of discretion. It's a high standard. It's an extraordinary remedy, as we pointed out in our papers. Well, now, wait a minute. Don't you have to show that the district court clearly erred? Yes. And I think we — Okay. Well, that's not abuse of discretion. That's fine, Your Honor. I'm sorry. But yes, clearly — I'm sorry. I misspoke. Clearly erred. And we think we've demonstrated that. What about the Court's expressed concern as the typicality that Bridgestone may have a unique defense? So in that way, you're not the best lead plaintiff if you're going to be focusing on that. So we think that that was clearly erroneous as well. The Court effectively held that my client couldn't demonstrate or was subject to a reliance attack based on the fact that it purchased an option during the class period at a — at a price higher than the $420 mentioned in Mr. Musk's tweet, okay, and says, well, that makes part of your loss uncertain because defendants will attack you on the basis of reliance. And we point out in our papers under binding Supreme Court precedent, starting with Basic v. Levinson and ending most recently with a Halliburton decision, that that is clearly wrong as a matter of law. By contrast, the Court appointed an investor who purchased an option with a strike price of $500 and did so before the class period even began. How can he rely or have any reliance by making a purchase of an option at a price higher than the purchase before the defendant has even made a statement? That makes — that would turn decades of black-letter law, in our view, on its head. So you have an investor who buys during the class period at a strike price higher during the class period when a defendant's statement is made, cannot demonstrate reliance, but somebody who bought before the class period and before the defendant 's statement was ever made somehow relied on that statement. That's the Court's holding. We think that that was erroneous. And there's a second point. If you apply the district court's logic against my client to the plaintiff that was ultimately appointed, Mr. Littleton, and subtracted his losses the way the Court subtracted ours, our financial interest would remain higher. So if that rule was applied equally to both sides and both parties, we still end up ahead. And I'd like to point something out, and this is Exhibit O — no, I'm sorry, Your Honors. Exhibit P. There's a chart at 5, and it's — and it's the response that was filed by Mr. Littleton. In that chart — and you'll see what Mr. Littleton does. It's very clever, and what his counsel did. He has Glenn Littleton in 1, 2, 4 place in terms of losses. But he creates this chart to demonstrate that he has the broadest financial interest. But if you look immediately above, Your Honor, it's Bridgestone investment, and our loss is bigger. That concession was made. And so my — no, my time's running up. But we mentioned that quote from the Court, and this is the last thing I'd like to say, and I think it's important, and it's connected to a footnote, footnote 2 of our reply. Littleton's brief led the Court astray, where he argues, and this is Exhibit L at 2, Littleton's losses, even though the — not the biggest losses, were a combination of short positions, long positions, and options. And therefore, he has the most to gain by assuring a class and outcome that covers all class members. Therefore, Littleton is the movement most capable of adequately representing the interests of class members. Ginsburg. Is there any indication that any other company vying for lead plaintiff status is subject to the unique defense that was identified for Bridgestone? So it wasn't even identified. It was speculated about at oral argument. No other applicant raised that argument. In fact — I'm focusing on the district court's analysis, because you've got to show that it's clearly erroneous. No. I've never — this decision, Your Honor, is unprecedented. I've been a securities lawyer for 18 years, and this decision is unprecedented. Never seen anything like it, and notably, since it was decided, has not been cited by anyone once. And the reason for that is that it's wrong, and it's clearly erroneous. And Judge Robart in Outerwall, which we cite in footnote 2, says in denying the exact same sort of efforts here, I am not allowed to do what you're asking me to do under Kavanaugh. And so when Mr. Littleton makes that argument at page 2 of his brief, he doesn't cite Kavanaugh. He doesn't cite this Court's precedent. He cites a case called Durao from the Southern District of New York that says it doesn't matter if you're the smallest loss, because I'm better, you should appoint us. And that's precisely what the Court did, despite this Court's admonition against doing relative comparisons and turning the lead plaintiff dispute into a beauty contest. And that's the language from Kavanaugh. Kagan. You're over time. Thank you, counsel. Thank you, Your Honor. Good morning, Your Honors. Nicholas Porrett, on behalf of the plaintiff party in interest, Glyn Littleton. As Your Honors observed during argument by Mr. Adu, this is they're asking for an extraordinary remedy here. I think this is probably the highest level of appellate review that the Petitioner here must satisfy by showing that it was a judicial usurpation of power by the district court here in appointing the lead plaintiff. And as Your Honors also pointed out, there was no such usurpation here. The Court, facing a complicated case, an unusual case, applied the exact framework and path as described by this Court in Kavanaugh in how to appoint lead plaintiff under the statute, followed that path, and ended up with the lead plaintiff that it deemed to be or determined to be the most adequate plaintiff. As required, that is the statutory test. In doing so, it first ranked them according to financial interest, as required by the statute and Kavanaugh, and then considered them individually without comparisons, determined that the first three largest size losses were not adequate or typical, did not meet the rule 23A requirements, until it fell on my client who was fourth in the rankings. So that is the path that is set forth in the order, the first order in November appointing lead plaintiff. Bridgestone attacked that in the motion for reconsideration and said, you know, the Court didn't do that. It was actually you actually followed a different agenda. The district court denied that and clearly said in its December order you are mischaracterizing what we did. And now they do it again in their petition here where the district court has once again filed a motion saying that is a submission saying that is not what I did. This is the process we filed. I followed Kavanaugh. And apparently only the petitioner can really see into the mind of what the district court did. The district court can't, has, you know, misled the court as to what its reasoning is in its order and its submission here. And instead, petitioner really knows its true thinking. To allow a mandamus petition based on a disappointed movement's speculation as to what the court was really thinking when it entered an order would be really quite extraordinary. And that is the sort of process that Baumann is really expressly designed not to do. It's expressed a cab in the mandamus process to make sure that it did not embark upon frequent mandamus petitions based upon this disappointment. I would also note Mr. Abdu says that the court went astray at the hearing. Of course, Mr. Abdu was there at the hearing and he commented twice on it to the court saying that in fact the court was doing the right thing in following Kavanaugh. That's at page 10, excuse me, page 18 of Exhibit B. That's the transcript where Mr. Abdu expressly says, so I think the court used the process the court used today in identifying the top three losers, for lack of a better word, makes sense under Kavanaugh. And then later on towards the very end of the hearing on page 51, excuse me, on page 58, Mr. Abdu said that the court was doing the right thing. Excuse me, 52. I get it right in the end. Roberts. Of which document? The transcript? The transcript, again, on Exhibit B. It says, it says Mr. Abdu again. So I'm glad that, you know, the court has imposed some order on this process today, because I think that's consistent with what the Ninth Circuit has asked of us and has asked of the district courts in Cohen and Kavanaugh. So at the time, Mr. Abdu had no problem with the process the district court was following. The problem only arose when he received the ruling, the order in November, which denied his client's motion. Then, all of a sudden, the process the court followed is a judicial usurpation, it is freewheeling, it's a beauty contest, it's ignoring well-established law under the Ninth Circuit. So I think it's fairly transparent what this mandamus petition is trying to do here, and it clearly does not meet the requirements under the Bauman factors. Notably, for the Bauman factors, we talked about the gross error, or arguably, you know, the proposed gross error, which is not a gross error at all. But Mr. Abdu did not mention at all the other four factors, which at least some of the majority of them under Bauman should point towards mandamus relief to justify the extraordinary relief. He's not been able, as we pointed out in our papers, he's not identified any prejudice that his client has suffered. His client is still a member of the class. His client can still opt out of the class and assert his claims individually. His client may intervene at any time if he thinks that the case is not being prosecuted adequately by Mr. Littleton. In the event that any settlement of resolution is presented, he can present he can object, present arguments at that point in time. It's notable that in Sendant case, cited in the papers in the Third Circuit, all of these plaintiff disputes and arguments were presented in the context of approval of a settlement. So there was more than enough provision for Bridgestone to preserve its interests and make these arguments at a later date without needing the extraordinary relief here of a mandamus petition. Similarly, there's none of the other. This is not an oft-repeated error. You can't identify any other case, nor is it, I don't think, a particularly novel question of law. What you have here is a very specific case with an unusual structure of the proposed class, which the Court approached in a reasonable and rational manner and applied the Court the standard that it was given. Roberts. Well, counsel, back to clear error for a moment. Would you comment on the typicality issue? So the typicality in terms of the calculation of the other of this options issue. So Mr. Abdu completely, I think, misunderstands what the Court was doing in the context of applying the reliance issue, saying it was that his client was potentially subject to a unique defense based on reliance. The Court was not rejecting Halliburton or basic presumption, of course not. And nowhere in the papers is that suggested. What he was saying is that Bridgestone's trading strategy by buying options supposedly after the tweet, saying that would that it wasn't relying on the tweet. So they are still in charge of the presumption because they are a participant in the market, but the presumption is rebuttable. And the point being is that Bridgestone is uniquely subject to that rebuttal based on its unique trading strategy by buying options priced at $450 after that tweet. That is the argument. I think it's fairly simple. It's not saying that argument will prevail. It's just saying that that is a potential focus, and that is, as this Court has recognized in Hannon and the Supreme Court recognized in Amgen, that could be a reason why a plaintiff may be atypical and unsuitable for a class representative. And our review of that is whether that particular finding is clearly erroneous. Is that where we are? I think it would be, yeah, it would be clearly erroneous, yes, gross abuse of discretion or judicial usurpation. I think it completely falls within the Court's discretion as to how it determines adequacy and typicality at this particular point in time. It was based upon the documents, the evidence submitted, the sworn certification submitted by Bridgestone itself. So there was a basis. It's not as if it came out of nowhere. And the comparison with my client's position is just, is completely mistaken by Bridgestone. My client bought options priced above $420 per share before the class period. No one is saying, not us and not the district court, that they somehow magically relied on the tweet when purchasing those options. The point is, is that following the tweet, those option positions had to be closed at a price that was — that caused harm as a result of the price manipulation caused by the fraudulent tweet. That is the — that is the position. So — What about the other entities who were ranked in terms of loss above Littleton and Bridgestone? Correct. Were they subject to that unique defense as well? I don't think any of them were subject to that particular unique defense, because none of them — none of them bought, I don't believe, options priced above $450 after the tweet, after August 7th, 12.48 p.m. on August 7th, which is when the tweet was. By the way — I mean, the court assumed, by the way, that Bridgestone purchased those options after the tweet. It's not clear that they did, because they never submitted sufficient timestamp records showing — they just said they bought them on August 7th. It could have been before the tweet. It could have been after the tweet. It's not clear. And that would certainly also have a ramification for the trading strategy. But I don't think anyone else — so Adeptus had — who claimed the largest loss, they were found to be inadequate for really a bunch of reasons, one of which was he had concern — the court had concerns about the structure and representation of their — of their fund, because they were a foreign fund, but mainly because they only purchased shares on August 7th. Or rather, they only had open — short positions, pre-class period, and just closed them out, and that was their loss. So they were a pure short. And there was a concern here — this is cases unusual. One way this case is unusual is — I'm not aware, though Mr. Abdu says that this is similar to all classes — this class is not like all classes in security class actions, and I've also been doing it for 20 years. Here, to have so prevalent an important — a short position of shorts who were harmed, both because they were singled out, but more importantly because they suffered the harm. They suffered approximately — and this is not disputed by Bridgestone — maybe a third of the harm was suffered by shorts closing out on the first day of the class period. That is very unusual. You do not see that in most class actions. And then you have, for the rest of the class period, which was only 10 days long, most of the losses are suffered by longs. And so you have this combination of shorts and longs, and it's important for — to be an adequate class representative to represent both. And there's an example here from Bridgestone's own papers, which is that defendants have said at the argument that they are going to attack short sellers and say they didn't really suffer harm. Not clear what those arguments will be. We think that those arguments are not well-founded, but they're going to attack short sellers as not having losses, not having — not being able to be represented in this class action. In his papers, Bridgestone, who was a long, so therefore has no incentive to defend the interests of short sellers, has said that short sellers are subject to unique defense, and therefore, you know, shouldn't be part of the class. So in pursuing the plaintiff here, where he wants to represent short sellers, he has always given away interests, enacted adversity interests of the short sellers, the people he would represent. That is a clear example of what the Court was attempting to avoid, which is that in — you have a class here where you have strong long interests and a strong short interest. Having one who's — having a proposedly plaintiff who only is in one camp, so to speak, presents an adequacy problem, putting to one side the typicality on the — on the potential loss causation that — that Bridgestone would have to represent. The main point being is that these are — these assessments, you could argue, and obviously Bridgestone did, that, you know, there are arguments to the other side. The point is that these were all well within the well-reasoned discretion that the Court could apply in managing its case and applying factors under, you know, Rule 23A, 3, and 4, and so these are routinely applied, and so there is not the sort of gross error or judicial usurpation that is required for a mandamus petition. Counsel, I have one question, if you wouldn't mind responding to Mr. Abadou's point that your client conceded that Bridgestone was — had a larger loss by virtue of a chart. Unfortunately, I wasn't able to see the chart, but you — you must know what he was talking about. I do know that the — the point — the heading on that chart on the column of losses was claimed losses. So there were challenges made to the claimed losses, certainly of Adeptus, because it was claiming the entire out-of-pocket loss in connection with its short positions that it closed out, when, in fact, a lot of those losses probably were not caused by the fraud itself, because the — that short position was already at a loss position even before the tweet on August 7th, due to other company announcements, which are not part of the stock price, not part of this lawsuit. So there were challenges made against, for instance, Adeptus's losses, and challenges were made or questions raised about Bridgestone's claimed losses. The — the chart, we just ranked them in terms of the claimed losses as, you know, in a sort of non-judgmental way, and said you have to rank them using the numbers, and we didn't want to get into at that point in time, based on what arguments that could be made under particular losses. So it's not — but in any event, it's almost beside the point, because Bridgestone was treated as if it had a larger loss by the court. The court just said there's a question mark over it, which is a unique defense, and therefore it's not adequacy or, you know, they're not adequate or typical, and therefore we dropped down the list. I mean, the — the quote that Mr. Abadou pointed to the court about Mr. Lyttelton is appointed here because he has long interest, short interest, etc., that was made when Mr. Lyttelton was being considered on his own after rejecting Adeptus, after rejecting the TIG investment group, investor group, and after rejecting Bridgestone, also each considered individually. So there was no grand comparison or beauty contest here. The process in Kavanaugh was followed, I would say, to the letter here by the district court, and there really was no — I don't think it was even abuse of discretion, let alone the gross abuse of discretion that would be required for a — for a mandamus petition. And unless you have courts have any — the court has any questions, I'll see you in my remaining minute. All right. Thank you very much to both sides for your argument. The matter is submitted for decision by the court, and that covers today's calendar. The court is adjourned.
judges: O'scannlain, Siler, Nguyen